IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM O'DANIEL,

                        Petitioner,            Civil Action No.
                                             9:15-CV-1183 (DNH/DEP)

      v.

DANIEL MARTUSCELLO, JR.,

                        Respondent.

_____

APPEARANCES:                  OF COUNSEL:

FOR PETITIONER:

BRYAN LAW FIRM            BRUCE R. BRYAN, ESQ.
333 East Onondaga Street
Suite 600
Syracuse, NY 13202

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN   ALYSON J. GILL, ESQ.
New York State Attorney General  MATTHEW B. KELLER, ESQ.
The Capitol                 Assistant Attorneys General
Albany, New York 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a proceeding brought by petitioner William O'Daniel, a New York State prison inmate, pursuant to 28 U.S.C. § 2254, requesting habeas relief from this court. In his petition, O'Daniel argues that by failing to grant his requests for a continuance in light of his retained attorney's illness, the trial court denied him the right to his choice of counsel as guaranteed under the Sixth Amendment to the United States Constitution. Petitioner also contends that he was denied the right to effective assistance of counsel by the substitute attorney who represented him at trial. For the reasons set forth below, I recommend that the petition in this matter be denied.

I.    <u>BACKGROUND</u>

On July 21, 2009, a Clinton County grand jury returned an indictment charging petitioner with two counts of first-degree rape, one count of attempted first-degree rape, two counts of first-degree sexual abuse, and two counts of endangering the welfare of a child. Dkt. No. 15-3 at 80-83. Those charges stemmed from allegations that petitioner had improper

sexual contact on three consecutive evenings in 2005 with the five-year old daughter of his live-in girlfriend.[1]

Upon being charged, petitioner retained James E. Martineau, Jr., Esq. to represent him. Dkt. No. 15-4 at 116, 132-33. For several years prior to being retained, Attorney Martineau suffered from chronic Crohn's Disease, a medical condition that causes temporary, debilitating flare-ups. Dkt. No. 15-4 at 105, 116. While Attorney Martineau was generally able to manage the disease following its onset, in 2010, he was hospitalized on numerous occasions beginning in February and continuing through December, for a total of approximately five months.[2] *Id.*

Following an earlier delay, petitioner's trial was scheduled to begin on March 9, 2010. Dkt. No. 15-4 at 127. In February 2010, however, Attorney Martineau experienced another episode of his disease. *Id.* at 140. As a result, on March 1, 2010, Attorney Martineau requested an adjournment of the trial date because he anticipated being hospitalized

---

[1]     The indictment originally charged that the alleged criminal conduct occurred "on or about and between June 1, 2006 and December 25, 2006." Dkt. No. 15-3 at 80-83. It was later amended, however, to read "on or about and between June 1, 2005 and December 25, 2005." *Id.* at 80-83, 132-33.

[2]     Attorney Martineau listed those periods of hospitalizations as including (1) September 21-24, 2010; (2) September 28 - October 3, 2010; and (3) October 10, 2010 through "the middle of October." Dkt. No. 15-4 at 116-17.

"for a couple of weeks starting on March 5, 2010." *Id.* The court granted
Attorney Martineau's request, and the trial date was reset to May 17, 2010.
*Id.* at 128.

On April 28, 2010, the prosecution requested a further adjournment
of the scheduled trial due to a witness' unavailability. Dkt. No. 15-3 at 135.
On the same date, Attorney Martineau also requested an adjournment,
citing health concerns. Dkt. No. 15-4 at 141. The trial was rescheduled for
August 16, 2010. *Id.* at 128; *see also* Dkt. No. 15-3 at 136. The
prosecution again asked for an adjournment of the trial on July 2, 2010,
due to the vacation schedule of another witness. Dkt. No. 15-3 at 136. The
request was granted, and the matter was scheduled as a "backup" to
another criminal matter to be tried on October 12, 2010. *Id.* at 137.

Attorney Martineau's health issues resurfaced in September 2010.
Dkt. No. 15-4 at 116. On September 21, 2010, Clinton County Court Judge
Patrick R. McGill, the assigned trial judge, sent a letter to Attorney
Martineau expressing concern regarding the attorney's health condition.
Dkt. No. 15-3 at 138. In pertinent part, the letter stated the following:

> Knowing the somewhat tenuous nature of
> your health, I am concerned that you may not be
> able to proceed with the trial on the 12th of October
> and thus another opportunity to dispose of this
> case will be lost.

> I would suggest that maybe you seek out a
> second chair with regard to the trial in this matter in
> advance of October 12, 2010, so that in the event
> that you are unable to proceed, the trial can go
> forward. It is not my intention to interfere with your
> representation of Mr. O'Daniel nor his right to have
> you represent him. It is purely a matter of fairness
> and Standards and Goals.

*Id*. Attorney Martineau responded by letter dated September 24, 2010,

advising he had contacted Attorney Keith Bruno "to act as [his] second

chair in the event that [he is] unable to be proceed" with the trial. Dkt. No.

15-4 at 115. In that letter, Attorney Martineau further stated that he had

"advised [his] client of the situation."[3] *Id.*

Attorney Bruno first spoke with Attorney Martineau on September

21, 2010, regarding the possibility of assisting him at the trial if required.

Dkt. No. 15-3 at 148-49; Dkt. No. 15-4 at 109. When Attorney Bruno

visited Attorney Martineau in the hospital on September 28, 2010,

however, it became clear to Attorney Bruno that Attorney Martineau would

not be capable of representing petitioner at the trial if it proceeded as

scheduled. Dkt. No. 15-3 at 149; Dkt. No. 15-4 at 109. The following day,

Attorney Bruno advised Attorney Martineau that he would represent

---

[3]    Attorney Bruno, who was not an attorney in Attorney Martineau's firm, stood in
for Attorney Martineau earlier at petitioner's arraignment in 2009. Dkt. No. 15-4 at 215-
29. Attorney Bruno had no further involvement in the case, however, until late-
September 2010. Dkt. No. 15-3 at 142.

petitioner at trial and contacted Attorney Martineau's office to obtain petitioner's case file. *Id.* Petitioner's case file was delivered to Attorney Bruno's office on September 30, 2010. Dkt. No. 15-3 at 149; Dkt. No. 15-4 at 109-10. This "was the first occasion that [Attorney Bruno] had ever reviewed the documentation and pleadings involved in [petitioner]'s file." Dkt. No. 15-4 at 110; *see also* Dkt. No. 15-3 at 149. Attorney Bruno met with petitioner and his father on October 1, 2010, and several times thereafter, in preparation for the trial. Dkt. No. 15-3 at 149; Dkt. No. 15-4 at 110.

Judge McGill conducted a pretrial conference in the case on October 5, 2010, to discuss a plea bargain offered by the prosecution. Dkt. No. 15-3 at 139-46. Petitioner appeared at that conference and was represented by Attorney Bruno, without the presence of Attorney Martineau, and the assigned assistant district attorney placed the plea offer on the record. *Id.* The plea bargain offered plaintiff the opportunity to plead guilty to sexual abuse in the first degree and endangering the welfare of a child, conditioned upon his completion of the EVEN SAFER program, in exchange for a sentence of five months of incarceration in a local jail facility followed by ten years of probation. *Id.* at 140-41. Attorney Bruno conferred with petitioner concerning the offer and explained the potential

consequences of rejecting it and instead proceeding to trial. *Id.* at 144-45.

According to Attorney Bruno, petitioner had to make a decision concerning

the offer that same day. *Id.* at 145. Petitioner rejected the offer. *Id.*

During the pretrial conference, Attorney Bruno advised Judge McGill

that Attorney Martineau remained petitioner's counsel of record, and that

he had agreed to become second chair, though "more than likely first

chair, because of [Attorney Martineau's] health at th[at] time." Dkt. No. 15-

3 at 142. Attorney Bruno also requested an adjournment of the trial on

behalf of petitioner, stating the following:

> With respect to that background, on behalf of
> Mr. O'Daniel, I would make a motion to adjourn the
> trial date of October 12th, 2010 to a later date.
>         Having said that, Your Honor, I would set
> forth that I believe I'm a fairly competent attorney
> and experienced. If the trial were to go forward
> next week, I am confident that I will be prepared
> and ready to go forward to trial.
>         Mr. Daniel [sic] believes that the legal system
> has unfairly -- is being unfair to him because of Mr.
> Martineau's health. I have explained to Mr.
> O'Daniel that this matter has been scheduled to my
> knowledge -- and I stand to be corrected -- at least
> for trial on four different occasions. It's been
> adjourned at the request of defense on a couple of
> those occasions, unfortunately, due to Mr.
> Martineau's health.
>         The Court has the obligation to move matters
> along in a timely fashion. The Court has what is
> referred to as standards and goals. I explained all
> that to Mr. O'Daniel. I explained that I am confident
> that I will be fully prepared and ready for trial.

> However, pursuant to his request, I
> nevertheless make the motion seeking an
> adjournment of the trial schedule for next Tuesday.

*Id.* at 142-43. That motion, which was opposed by the prosecution, was

denied by the trial court. *Id.* at 143-44.

At the commencement of trial on October 12, 2010, Attorney Bruno

renewed the motion for an adjournment, stating that "Mr. O'Daniel, from

his perspective, is of the opinion that we need more time to prepare for the

trial with respect to this matter." Dkt. No. 15-3 at 148. Attorney Bruno

summarized the sequence of events leading up to Attorney Martineau's

request that Attorney Bruno assist him, and then argued that an

adjournment should be granted under New York Civil Practice Law and

Rules § 321(c).[4] *Id.* at 148-50. Attorney Bruno closed his argument by

stating that his "client, in requesting further time to prepare, has requested

---

[4]      Section 321(c) provides, in pertinent part, as follows:

> (c) Death, removal or disability of attorney. If an attorney
> dies, becomes physically or mentally incapacitated, or is
> removed, suspended or otherwise becomes disabled at any
> time before judgment, no further proceeding shall be taken
> in the action against the party for whom he appeared,
> without leave of the court, until thirty days after notice to
> appoint another attorney has been served upon that party
> either personally or in such manner as the court directs.

N.Y. C.P.L.R. § 321(c).

I make the motion." *Id.* at 150. After recounting the procedural history of

the case, the trial court denied the motion, observing as follows:

> I see no basis in the sense other than simply that Mr. Bruno has become late involved in the matter, but it seems to me that there's nothing indicating from Mr. Bruno that he is unable to proceed directly, that he is in need of extra time with regard to a specific need to prepare in some specific way.
>
> A general continuance at this time seems to me to be appropriate [sic] as there is no basis shown as to what needs to be done further with regard to preparation.
>
> And so unless and until there is some specific indication of what is needed at this time to further prepare, the Court will deny the motion.

*Id.* at 151-52.

At trial, the jury found petitioner guilty on all counts. Dkt. No. 15-4 at

100-102. Following the return of that verdict, petitioner moved to set it

aside pursuant to New York Criminal Procedural Law § 330.30(1) on the

basis that the trial court denied petitioner his right to counsel of his choice.

*Id.* at 103-25. In support of that motion, Attorney Martineau submitted an

affidavit in which he stated that he was petitioner's attorney of record from

the date of his arrest "up until the date of trial commencing on October 12,

2010." *Id.* at 105-06, 116-17. The affidavits given by Attorneys Bruno and

Martineau, submitted in connection with the section 330.30 motion,

summarized the circumstances surrounding Attorney Martineau's health

condition, specifically revealing that, as a result of the pain and discomfort caused by his Crohn's disease, he was unable to assist Attorney Bruno in preparing for petitioner's criminal trial, other than by participating in a brief meeting conducted in late September 2010. *Id.* at 105-06, 108-09, 116-17.

Petitioner's motion to set aside the verdict was denied by the trial court on February 18, 2011.[5] Dkt. No. 14 at 2-5. In his decision, Judge McGill twice stated his belief that O'Daniel was represented at trial by an attorney of his choosing. *Id.* at 3. After noting the lack of prejudice resulting from Attorney Bruno acting as trial counsel, and observing that "Mr. Bruno was familiar with the case and tried same in a highly competent matter," the trial court rejected that ground as a basis to set aside the verdict. *Id.*

On March 28, 2011, represented by both Attorneys Bruno and Martineau, petitioner was sentenced to a period of incarceration of nineteen and one-half years, to be followed by fifteen years of post-release supervision. Dkt. No. 15-4 at 158-59.

---

[5]    In addition to complaining of the denial of representation by counsel of his choice, in his section 330.30 motion petitioner argued that reversible error was committed when the trial court admitted testimony from an allegedly unqualified expert concerning the victim's physical condition. Dkt. No. 15-4 at 111-12.

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Third Department. Dkt. No. 15-2 at 185-94; Dkt. No. 15-3 at 1-66. In that court, he raised several arguments in support of his request for reversal, including (1) denial of his constitutional and statutory right to choice of counsel; (2) ineffective assistance of counsel; (3) weight of the evidence; (4) trial court error in permitting a nurse practitioner to testify concerning evidence of sexual abuse; and (5) harsh and excessive sentence. *Id.* In a decision issued on April 11, 2013, a four-judge panel of the Third Department unanimously affirmed petitioner's conviction. *People v. O'Daniel*, 105 A.D.3d 1144 (3d Dep't 2013).

In its decision, while acknowledging the right of a criminal defendant to be represented by retained counsel of his choosing, the Third Department rejected petitioner's right-to-counsel arguments, pointing out that there was nothing in the record to indicate petitioner was unwilling to proceed to trial with Attorney Bruno as his counsel and concluding that the trial court did not abuse its discretion in denying petitioner's request for a further adjournment. *O'Daniel*, 105 A.D.3d at 1146-47. Addressing the ineffective-assistance-of-counsel argument, the appellate court concluded that petitioner received meaningful representation from Attorney Bruno. *Id.* at 1147. The court also concluded that the verdict was not against the

weight of the evidence and the sentence imposed was not unduly harsh and excessive. *Id.* at 1147-48.

Petitioner was granted leave to appeal further to the New York State Court of Appeals. *People v. O'Daniel*, 21 N.Y.3d 1018 (2013). In his appeal to that court, petitioner raised the same three arguments now presented to this court, asserting that (1) he was denied his constitutional right to choice of counsel; (2) he was otherwise denied his constitutional and statutory right to counsel; and (3) he received ineffective assistance of counsel. Dkt. No. 15-5 at 190-97; Dkt. No. 15-6 at 1-28; Dkt. No. 15-7 at 1-27; Dkt. No. 15-8 at 1-16. On October 21, 2014, a divided Court of Appeals issued a decision affirming petitioner's conviction. *People v. O'Daniel*, 24 N.Y.3d 134 (2014). In its opinion, the majority concluded that petitioner's right to counsel of his choice was not denied. *O'Daniel*, 24 N.Y.3d at 138-39. The majority did, however, observe the following:

> When newly retained defense counsel requests an adjournment of trial and states that defendant believes that the trial would otherwise be unfair, the better practice would be to inquire of counsel and, if necessary, defendant [sic] as to whether defendant seeks an adjournment so that he may have the opportunity to retain new counsel or so that his counsel may become better prepared for trial.

*Id.* Petitioner's ineffective-assistance-of-counsel argument was disposed of by the court in a single sentence, the majority noting that "[d]efendant's remaining contentions lack merit." *Id.* at 139.

In a strong dissent, Chief Judge Jonathan Lippman expressed his belief from the record that petitioner had clearly invoked his right to retain counsel of his choice when seeking a postponement of the trial. *O'Daniel*, 24 N.Y.3d at 139-40. Specifically, Judge Lippman wrote as follows:

> Even if the defendant's October 5th adjournment request had been ambiguous as to whether it involved an assertion of his right to retain his own lawyer, his subsequent request for a trial postponement, made just one week later, immediately before the commencement of the trial, could have left no doubt that defendant was invoking his right to be represented by an attorney of his choosing.

*Id.* at 140. The dissenting chief judge concluded that, by forcing petitioner to proceed to trial represented by an attorney not of his choosing without compelling justification, the trial court violated petitioner's constitutional right to retain counsel of his choice. *Id.* at 141.

Petitioner did not seek a writ of *certiorari* from the United States Supreme Court, nor did he file any collateral challenges to his conviction before initiating this proceeding.

II.   <u>PROCEDURAL HISTORY</u>

Petitioner, who is represented by counsel, commenced the currently pending proceeding in this court on October 2, 2015. <u>Dkt. No. 1</u>. Petitioner subsequently filed a memorandum in support of his petition on October 8, 2015. <u>Dkt. No. 4</u>. On January 11, 2016, respondent, Daniel Martuscello, Jr., represented by the Office of the New York State Attorney General, submitted an answer and memorandum in opposition to O'Daniel's petition, accompanied by the relevant state court records, including a transcript of petitioner's trial. Dkt. Nos. 12-15. This matter, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York  Local Rule 72(b). *See* Fed. R. Civ. P. 72.3(c).

III.   <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in a state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Washington v. Griffin*, No. 15-3831, --- F.3d ----, 2017 WL 5707606, at *6 (2d Cir. Nov. 28, 2017). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may

only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   Whether Petitioner Was Denied His Constitutional Right to Choice of Counsel

Petitioner's first contention in support of his request for a writ of habeas corpus is that he was denied his constitutional right to his choice of counsel when the trial court denied his requests for an adjournment of trial at the pretrial hearing on October 5, 2010, and again on October 12, 2010, the first day of trial. Dkt. No. 4 at 26-48.

The Sixth Amendment provides an individual accused of committing a crime the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Included within this right is the accused's right to counsel of his own choosing, provided that he does not require appointed counsel. *Wheat v. United States*, 486 U.S. 153, 159 (1988); *accord, Gonzalez-*

16

*Lopez*, 548 U.S. at 144. This "right to choose one's own counsel[, however,] is circumscribed in several important respects," *Wheat*, 486 U.S. at 159, and "cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir. 1963). Indeed, the Supreme Court has recognized that trial courts enjoy "a great deal of latitude in the scheduling of trials," and that "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quotation marks omitted).

Determining whether a court abused its discretion in denying a request for a continuance when faced with questions related to the Sixth Amendment right to one's choice of counsel requires consideration of all of the facts and circumstances known at the time of the request. *See Slappy*, 461 U.S. at 12 (taking into account, "at greater length than usual," the facts the trial court faced in determining whether to grant the defendant's request for a continuance); *see also Gandy v. State of Ala.*, 569 F.2d 1318, 1323-24 (5th Cir. 1978) (listing six factors a court should consider when exercising its discretion to grant or deny a request for a continuation). The Second Circuit, moreover, has held that "where a

defendant voices a seemingly substantial complaint about his counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981). Failure to do so, however, is subject to a harmless error analysis, and no constitutional violation will have occurred unless the defendant can demonstrate that he was harmed by the court's failure to inquire into his displeasure with his attorney. *See McKee*, 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting [a] writ [of habeas corpus]."). Importantly for purposes of the instant case, a court's failure to formally inquire into a defendant's dissatisfaction with counsel is harmless error when the court has reason to believe that the defendant has already provided his grounds for consideration. *Id.*

In this case, petitioner asks the court to find that his Sixth Amendment right to his choice of counsel was violated when the trial court failed to ask him directly to state his reasons for seeking an adjournment. Dkt. No. 4 at 41-43. Indeed, this is the ground on which the dissenting judge on the New York State Court of Appeals hinged his opinion. *See O'Daniel*, 24 N.Y.3d at 141 (Lippman, J., *dissenting*) ("The court was not obliged to put off the trial indefinitely, but it was required, given the fundamental, indeed structural right implicated, at least to inquire whether

Mr. Martineau could be expected to recover and try the case within a reasonable time and, if that did not seem likely, to afford defendant a reasonable opportunity himself to retain substitute counsel."). Having carefully reviewed the relevant state court records related to this question, I find that the state courts neither unreasonably applied established Supreme Court precedent nor rendered their decisions based upon an unreasonable determination of the facts. My analysis begins with a rendition of the full facts and circumstances preceding the two requests for an adjournment of trial at issue on October 5, 2010 and again on October 12, 2010.

Petitioner hired Attorney Martineau in February 2009, months before petitioner was even indicted for the crimes of which he was ultimately convicted. Dkt. No. 15-4 at 132-33. Indeed, Attorney Martineau was involved in pre-indictment plea negotiations on petitioner's behalf. *Id.* at 134, 137. Because Attorney Martineau was on vacation on the date of petitioner's arraignment in July 2009, Attorney Bruno appeared on behalf of petitioner at that proceeding. *Id.* at 216-18. Thereafter, Attorney Martineau was the only attorney of record for petitioner until October 12, 2010, the first day of the trial. Dkt. No. 15-5 at 38.

The record reflects that on March 1, 2010, and again on April 28, 2010, Attorney Martineau sought an adjournment of the trial due to his poor health.[6] Dkt. No. 15-4 at 141; Dkt. No. 15-8 at 85. For its part, the state also sought, and was granted, trial adjournments on two occasions, once on April 28, 2010 (requested concurrently with petitioner) and again on July 2, 2010. Dkt. No. 15-8 at 86-87. On September 21, 2010, three weeks before the trial was scheduled to begin, the trial court wrote a letter to Attorney Martineau suggesting that, because of his previous health history, he "seek out a second chair with regard to the trial . . . so that in the event that [he was] unable to proceed, the trial can go forward." Dkt. No. 15-4 at 114. The court noted that it did not intend to interfere in Attorney Martineau's representation of petitioner and that the concern was "purely a matter of fairness and Standards and Goals." *Id.* Upon receipt of the court's letter, Attorney Martineau contacted Attorney Bruno "to act as second chair in the event that [he could not] proceed with [the trial.]" *Id.* at 115.

---

[6]    Although it is true that Attorney Martineau requested an adjournment of the trial in January 2010, that request was a condition to petitioner's consent to the state's request to amend the indictment and did not relate whatsoever to Attorney Martineau's health. Dkt. No. 15-4 at 139.

Because Attorney Martineau's health deteriorated again between the time he corresponded with the court in late-September 2010 and the scheduled trial date on October 12, 2010, Attorney Bruno assumed control of petitioner's case on or about September 30, 2010, when he received petitioner's case file from Attorney Martineau's office. Dkt. No. 15-5 at 37-38, 41-42. On October 1, 2010, Attorney Bruno met with petitioner regarding the trial. *Id.* at 42.

On October 5, 2010, Attorney Bruno appeared with petitioner in court for a pretrial conference. Dkt. No. 15-8 at 90-97. At that time, Attorney Bruno set forth the following request for an adjournment of the trial on behalf of petitioner:

> MR. BRUNO: Thank you, Judge McGill. First and foremost, Your Honor, I'd like to thank the Court and the District Attorney's office for scheduling this matter for a conference.
>
> As the Court is aware, Mr. James Martineau, Junior, is the attorney of record. He remains the attorney of record. I've agreed to second chair, more than likely first chair, because of his health at the time.
>
> On that basis, I would inform the Court that I was contracted by Mr. Martineau approximately two weeks ago. In that interim time I have reviewed his entire file, met with Mr. Martineau on a couple of occasions, discussed aspects of this case, met with Mr. O'Daniel, the defendant, as well as his father.

> With respect to that background, on behalf of Mr. O'Daniel, I would make a motion to adjourn the trial date of October 12th, 2010 to a later date.
>
> Having said that, Your Honor, I would set forth that I believe I'm a fairly competent attorney and experienced. If the trial were to go forward next week, I am confident that I will be prepared and ready to go forward to trial.
>
> Mr. Daniel [sic] believes that the legal system has unfairly -- is being unfair to him because of Mr. Martineau's health. I have explained to Mr. O'Daniel that this matter has been scheduled to my knowledge -- and I stand to be corrected -- at least for trial on four different occasions. It's been adjourned at the request of defense on a couple of those occasions, unfortunately, due to Mr. Martineau's health.
>
> The Court has the obligation to move matters along in a timely fashion. The Court has what is referred to as standards and goals. I explained all that to Mr. O'Daniel. I explained that I am confident that I will be fully prepared and ready for trial.
>
> However, pursuant to his request, I nevertheless make the motion seeking an adjournment of the trial scheduled for next week.

*Id.* at 92-94. After hearing from the prosecutor, who opposed petitioner's motion, the court denied the request without explanation. *Id.* at 95.

On October 12, 2010, the first day of the trial and before voir dire commenced, Attorney Bruno renewed petitioner's motion for an adjournment on the trial, specifically noting that petitioner requested him to make the motion. Dkt. No. 15-5 at 131,133. Although Attorney Bruno suggested that petitioner sought the adjournment for additional time to

prepare, *id.*, Attorney Bruno also cited New York Civil Practice Law and

Rules ("CPLR") § 321 in support of the motion. *Id.* at 132-33. In relevant

part, that statute provides as follows:

> (c) Death, removal or disability of attorney. If an
> attorney dies, becomes physically or mentally
> incapacitated, or is removed, suspended or
> otherwise becomes disabled at any time before
> judgment, no further proceeding shall be taken in
> the action against the party for whom he appeared,
> without leave of the court, until thirty days after
> notice to appoint another attorney has been served
> upon that party either personally or in such manner
> as the court directs.

N.Y. C.P.L.R. § 321(c). At that time, Attorney Bruno also noted that "Mr.

Martineau is retained counsel by Mr. O'Daniel." Dkt. No. 15-5 at 133.

Without acknowledging Attorney Bruno's argument premised on CPLR §

321, the court denied the motion saying, "[T]here is no basis shown as to

what needs to be done further with regard to preparation." Dkt. No. 15-5 at

133-35. At no time on October 5, 2010 or October 12, 2010, did the court

ask petitioner any direct questions, including whether he desired and/or

consented to have Attorney Bruno represent him at trial.

    In light of the record, I find that neither petitioner nor Attorney Bruno

ever explicitly or implicitly invoked petitioner's Sixth Amendment right to

counsel of choice in the motions for adjournment on October 5, 2010 or

October 12, 2010. On October 5, Attorney Bruno merely indicated that

petitioner believed he was being prejudiced by the court's actions due to Attorney Martineau's health. Neither petitioner nor Attorney Bruno elaborated regarding what rights, if any, were being impinged or precisely how the court was responsible for any prejudice. Instead, the motion was (albeit, vaguely) premised on the fact that Attorney Bruno had only recently received petitioner's case file. This fact, however, was ameliorated by Attorney Bruno's unrebutted representation that he was an experienced attorney who had already reviewed the case file, met with petitioner, and had every confidence that he would be prepared for trial on the scheduled date. On October 12, 2010, Attorney Bruno renewed the request for an adjournment at the explicit instruction of petitioner. The motion, however, was not premised on petitioner's right to his choice of counsel. Instead, Attorney Bruno stated, "Mr. O'Daniel, from his perspective, is of the opinion that we need more time to prepare for the trial with respect to this matter." Dkt. No. 15-5 at 131. Attorney Bruno also cited a provision in the CPLR in support of the motion, but (and setting aside the issue of whether the statute is even applicable in criminal proceedings) he neither implicitly nor explicitly tied CPLR § 321 to petitioner's rights under the Sixth Amendment. In summary, because petitioner's requests for adjournment of trial on both October 5, 2010 and

October 12, 2010, were not premised on petitioner's right to his choice of counsel, but instead were based on the need for additional time to prepare for trial, the trial court had no reason to inquire with petitioner regarding his choice of counsel or otherwise insure that his Sixth Amendment rights were protected.

This case is reminiscent of *Slappy* insofar as the Supreme Court in that case criticized the Ninth Circuit Court of Appeals for construing the petitioner's first two motions for an adjournment of trial as being premised on the ground that he wished his originally assigned attorney, Harvey Goldfine, who was hospitalized six days before the scheduled trial date, to represent him, rather than Bruce Hotchkiss, the substituted assigned attorney. *Slappy*, 461 U.S. at 12-13. As described by the Court, on the first day of the petitioner's trial, he told the court, "'I only have this P.D. [Public Defender] for a day and a half, we have not had time to prepare this case. He came in Tuesday night, last Tuesday night was the first time I saw him . . . . We have not had enough time to prepare this case.'" *Id.* at 6. At that time, Hotchkiss, who was a senior trial attorney from the same office as Goldfine, told the trial court that he felt that a continuance would not benefit him and that he was prepared to try the matter. *Id.* The trial court denied the continuance, and on the second day of the trial, the petitioner

again complained that Hotchkiss did not have enough time to prepare the case. *Id.* at 7. The petitioner also said, "'Mr. Goldfine [the original assigned attorney] was my attorney, he was my attorney, and he still is. I haven't seen him in five weeks because he's in the hospital.'" *Id.* at 7-8. The petitioner closed his argument by again complaining about his belief that Hotchkiss was unprepared for trial. *Id.* at 8.

On appeal from the district court's denial of the petitioner's request for a writ of habeas corpus, the Ninth Circuit construed the petitioner's complaints on the first and second days of the trial "as indicating that [the petitioner] timely and in good faith moved for a delay to permit Goldfine to continue to represent him." *Slappy*, 461 U.S. at 12-13. In reversing the Ninth Circuit, the Supreme Court wrote the following:

> The transcript clearly shows that [the petitioner] did not specifically assert a concern for continued representation by Goldfine until the third day of trial, 11 days after Hotchkiss had been substituted for Goldfine. Until then, all that [the petitioner] sought was a delay to give Hotchkiss additional time that [the petitioner], but not Hotchkiss, thought necessary to prepare for trial.

*Id.* at 13. As Justice Brennan concluded in his concurrence, "[i]t is clear. . . that [the petitioner] was basing his inartful motions for a continuance on the inadequate preparation of his appointed counsel. Even construing [the petitioner]'s statements liberally, as a court should, there is no way the trial

judge reasonably could have understood that [the petitioner]'s motions for a continuance were based on Goldfine's unavailability and on [the petitioner]'s desire to be represented by him." *Id.* at 18 (Brennan, J., *concurring*).

As in *Slappy*, petitioner in this case did not explicitly or implicitly voice his disapproval of Attorney Bruno, but rather sought a continuance of the trial based on his belief that Attorney Bruno needed more time to prepare. Moreover, petitioner in this case never objected to Attorney Bruno's representation or requested the trial court delay trial until Attorney Martineau's health improved. In short, there is nothing in the state court record to indicate that, by requesting a continuance of the trial on both October 5 and 12, 2010, petitioner was invoking his right to his choice of counsel under the Sixth Amendment, rather than expressing a concern that his attorney was under-prepared to represent him at trial. To the extent petitioner argues that the Sixth Amendment right to choice of counsel mandates a court to inquire of every defendant when a new attorney appears on his behalf, I have found no authority for that proposition, and petitioner has cited none. On federal habeas review, "[a] state court cannot be faulted for declining to apply a specific legal rule that has not been squarely established by the Supreme Court." *Washington*,

2017 WL 5707606, at *10. Moreover, it is well established that "a principle is 'clearly established' for purposes of [section] 2254(d)(1) only when it is embodied in a Supreme Court holding." *Id.* at *11 (quotation marks, emphasis, alteration omitted).

Because I find that the state courts' decisions in this case were not an unreasonable application of established Supreme Court precedent or relied on an unreasonable determination of the facts, I recommend that petitioner's request for a writ of habeas corpus be denied to the extent he contends that his right to his choice of counsel under the Sixth Amendment was violated.

C.    Whether Petitioner Was Denied His Right to Counsel at the Pretrial Hearing

Petitioner next argues that he was denied counsel altogether at the pretrial hearing on October 5, 2010. Dkt. No. 4 at 48-52. While petitioner acknowledges that Attorney Bruno was present with him at the hearing, he contends that, because no agreement for legal representation was executed between them, petitioner was not actually represented at the hearing and therefore deprived of his Sixth Amendment right to counsel. *Id.*

As the Third Department described it, petitioner's argument in this regard is "patently meritless." *O'Daniel*, 105 A.3d at 1146. At the hearing

on October 5, 2010, Attorney Bruno (1) appeared on the record as counsel for petitioner; (2) indicated to the trial court that he had reviewed petitioner's file, met with Attorney Martineau regarding the case, and discussed aspects of the matter with both petitioner and his father before the hearing; (3) made a motion for continuance on behalf of petitioner; and (4) represented to the trial court that he had discussed the state's plea bargain in detail with petitioner at length. Dkt. No. 15-5 at 139, 142-45. Petitioner did not object to Attorney Bruno's appearance on his behalf or otherwise indicate to the trial court that Attorney Bruno was not his representative before or during the hearing. Any argument that petitioner was unrepresented at the hearing, or that Attorney Bruno "appeared at the pretrial proceeding in his own capacity," belies the record.

Petitioner also contends that his constitutional rights were violated when the trial court did not apply CPLR § 321 on the first day of the trial in response to his motion for a continuance. Dkt. No. 4 at 52-53. More specifically, he argues that the trial court, in denying the motion for a continuance based on CPLR § 321, "did not accord him as a criminal defendant the same protections afforded civil litigants in New York by statute." *Id.* at 52. While novel, the argument is unfounded, and, indeed, petitioner cites no legal authority in support.

Accordingly, I recommend the court deny petitioner's request for a writ of habeas corpus to the extent he contends he was denied counsel in violation of the Sixth Amendment during the pretrial proceeding on October 5, 2010.

D.   Whether Petitioner Was Denied Effective Assistance of Counsel

Petitioner's last argument is that he was not afforded effective assistance of counsel by Attorney Bruno at the pretrial conference on October 5, 2010, and again during trial when Attorney Bruno failed to call a medical expert in petitioner's defense. Dkt. No. 4 at 53-58.

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Wash.*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

30

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (noting the court's "scrutiny of counsel's performance must be 'highly deferential'" (quoting *Strickland*, 466 U.S. at 689)).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

### 1.   Pretrial Conference

As was noted above, petitioner contends that Attorney Bruno rendered him ineffective assistance of counsel during the plea hearing on October 5, 2010. Dkt. No. 4 at 55-56. Specifically, petitioner argues that, because Attorney Bruno indicated to the court that he *would be* prepared for the trial that was set to begin the following week, he was, at the time of the hearing, unprepared for trial and, therefore, incapable of rendering effective assistance of counsel to petitioner at the hearing. *Id.*

Undeniably, the Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining phase of litigation. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 141, 144 (2012). The two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel. *Lafler*, 566 U.S. at 162. Indeed, to merit habeas relief, "[t]he performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Id.*

The Supreme Court has declined to specifically enumerate or otherwise define the duties and responsibilities of counsel during the plea-bargain phase of a prosecution. *Frye*, 566 U.S. at 144-45. Nonetheless, the Court has issued some decisions in which it has concluded that an

attorney's advocacy fell short of the constitutional minimum. *See, e.g.,*

*Frye*, 566 U.S. at 145 ("[A]s a general rule, defense counsel has the duty

to communicate formal offers from the prosecution to accept a plea on

terms and conditions that may be favorable to the accused."); *Padilla v.*

*Kentucky*, 559 U.S. 356, 368-69 (2010) (concluding that a defense

attorney has the duty to accurately advise his client concerning the

deportation consequences of accepting a plea bargain).

Petitioner in this case, however, provides no legal authority in

support of his contention that an attorney who is unprepared for trial is

also incapable of providing constitutionally adequate representation to his

client during plea offer negotiations, and the court has similarly found

none. Such a proposition, of course, is untenable when considered against

the fact that most plea negotiations occur well before trial begins, and,

often, even before discovery in a criminal action commences. In that

respect, petitioner's argument belies the record evidence reflecting that

Attorney Martineau engaged in plea negotiations on petitioner's behalf

even before petitioner was indicted.

At the pretrial hearing, Attorney Bruno explained to the court the

extent to which he discussed the plea offer with petitioner as follows:

> I have conferenced at length with Mr. O'Daniel, as well as his father, discussing all aspects of the plea offer, potential consequences of going to trial. Obviously, there's always potential of being acquitted of the charge.
>
> We have discussed the potential that based on the indictment that is submitted to the Court – I apologize to Mr. O'Daniel and the Court, I don't have the entire potential sentence he's faced with – but knowing there's two counts of Rape, First Degree, which faces a maximum of 25 years, that potentially he could face a sentence of in excess of 50 years in the New York State Department of Corrections.
>
> Miss Padula was gracious enough to extend that plea offer today, as well as the Court. I discussed it with O'Daniel, and his father is present this morning.
>
> I've also obtained the documentation regarding the EVEN SAFER Program, as well as proposed terms and conditions of probation for an individual on sex abuse. I provided that to Mr. O'Daniel. He's had opportunity to review them.
>
> We've discussed them at length, and I informed him that he has to make a decision today, right now, and that it is at least the District Attorney's office position that either the decision is made one way or the other or the offer is being withdrawn.
>
> I would ask the Court to inquire of Mr. O'Daniel respectfully as to his position on accepting or rejecting the plea offer.

Dkt. No. 15-3 at 144-45. Petitioner does not argue, in support of his

request for a writ of habeas corpus, that Attorney Bruno failed to

adequately prepare for the pretrial conference or neglected to fully inform

him of the potential consequences of the plea offer. As the Supreme Court

has concluded, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has . . . been rejected because of counsel's deficient performance, [a] defendant[] must demonstrate a reasonable probability that [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 146.

Based on my review of the record, I find there is no reason to believe that Attorney Bruno provided petitioner unconstitutional representation at the hearing on October 5, 2010. For that reason, I recommend that petitioner's motion for a writ of habeas corpus be denied to the extent he believes he was rendered ineffective assistance of counsel during the pretrial conference on October 5, 2010.

      2.   <u>Trial</u>

Petitioner's final contention is that Attorney Bruno provided constitutionally inadequate representation during the trial by failing to engage an expert to rebut the trial testimony from the state's medical expert concerning the scarring found on the victim. Dkt. No. 4 at 56-58. For this proposition, petitioner relies on *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005). *Id.* In that case, the Second Circuit found that, "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of

ineffective assistance of counsel." *Gersten*, 426 F.3d at 607. "This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as opposed to direct physical evidence such as DNA, or third party eyewitness testimony." *Id.* Although these holdings, viewed in isolation, appear to apply to the facts of the underlying state criminal trial involving petitioner, the court is mindful of the Supreme Court's observation that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. The Court in *Harrington* further explained as follows:

> In many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict. And while in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.

*Harrington*, 562 U.S. at 111 (quotation marks and citation omitted).

In this case, the record before the court establishes that throughout his trial, petitioner was provided the type of active and capable advocacy

described by the Supreme Court, and specifically with respect to the prosecution's expert. Indeed, Attorney Bruno objected to the nurse practitioner's qualifications by emphasizing the fact that she had no formal education concerning child sexual abuse and that her training child sexual abuse occurred "many years ago." Dkt. No. 15 at 200, 212. In addition, during cross-examination, Attorney Bruno elicited testimony from the expert reflecting that she examined the victim after learning of the victim's history only from her father and her father's fiancée. *Id.* at 214-15. The expert never spoke to the victim concerning her allegations about the sexual abuse, nor did she speak to or obtain records from the victim's pediatrician. *Id.* at 215. In addition, the expert testified on cross-examination that she had no sense of when the injuries she identified concerning the victim's hymen had occurred. *Id.* at 217-18. Attorney Bruno also was prepared during his cross-examination with medical literature concerning best-practices for assessing allegations of sexual abuse and asked the expert about these practices. *Id.* at 213-14.

In light of Attorney Bruno's objection to the court's ruling rendering the nurse practitioner an expert, as well as his cross-examination of the expert, I find that the facts of this case are materially distinguishable from *Gersten* and that Attorney Bruno provided effective and competent

counsel to petitioner concerning the medical expert who testified for the prosecution at trial. I note that the petitioner's attorney in *Gersten* not only failed to call as a witness, but also failed to consult with, any medical expert on child sexual abuse in preparation for trial. *Gersten*, 426 F.3d at 607-08. In addition, counsel in that case "essentially conceded that the physical evidence [as presented by the expert] was indicative of sexual penetration," even though "exceptionally qualified medical experts could [have been] found who would [have testified] that the prosecution's physical evidence was not indicative of sexual penetration and provided no corroboration whatsoever of the alleged victim's story." *Id.* at 608. In this case, petitioner does not allege that the prosecution's expert testimony was unsupported by the scientific and/or among the medical community. Unlike the petitioner in *Gersten*, petitioner in this case has not provided the court with any reason to believe that the testimony of a competing expert at trial in support of his case would have diminished the victim's credibility, which had already been forcefully challenged by Attorney Bruno's advocacy on behalf of petitioner.

In light of the foregoing, I find that the Appellate Division's conclusion that Attorney Bruno rendered petitioner effective assistance of counsel at trial was neither contrary to nor involved an unreasonable application of

clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See Spicola v. Unger*, No. 16-2285, --- F.3d. ----, 2017 WL 5899918, at *2 (2d Cir. Nov. 30, 2017) (rejecting the petitioner's ineffective-assistance-of-counsel claim, which was based on his trial counsel's failure to consult with or call an expert witness to rebut the state's expert testimony concerning child sexual abuse, because the petitioner's attorney educated himself concerning the testimony proffered by the state's expert and adequately cross-examined the expert). For this reason, I recommend the court deny petitioner's request for a writ of habeas corpus on ineffective assistance of counsel grounds.

E.   Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may

issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I recommend a COA be issued with respect to plaintiff's Sixth Amendment choice-of-counsel claim to the extent petitioner contends that the trial court violated that right by denying his requests for an adjournment of the trial on October 5, 2010 and again on October 12, 2010. My recommendation in this regard takes into account the differing jurists' opinions concerning petitioner's claim, as reflected in the dissenting opinion of Judge Lippman in the New York State Court of Appeals.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

On various grounds, petitioner contends that his rights under the Sixth Amendment were violated during the underlying state court proceedings that resulted in his criminal convictions. Based on my review of the state court record, the state courts' decisions, and the applicable

legal authority, I find that none of petitioner's arguments are persuasive. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED but that a certificate of appealability be issued concerning only petitioner's Sixth Amendment choice-of-counsel claim.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      December 4, 2017
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge